**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**WALTER HARRELL, JR.,**

      **Plaintiff,**          **CIVIL ACTION NO. 04-CV-72139-DT**

      **v.**          **DISTRICT JUDGE DENISE PAGE HOOD**

**WYMAN-GORDON CO.,**      **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **DENIED**.

Plaintiff filed the instant action on June 8, 2004 alleging that Defendant improperly denied his claim for benefits under its ERISA plan. The parties filed cross-motions for summary judgment on January 18, 2005. On February 17, 2005, both motions were referred to the undersigned for report and recommendation. The parties presented oral argument on May 11, 2005.

I.    **Factual Background**

Plaintiff worked at Defendant's Jackson, Michigan plant from 1975 until November 26, 1991, when he took disability leave to have ankle surgery. Defendant's Jackson plant ceased all production in December, 1991 and officially closed on April 30, 1992. Plaintiff had 14.4 years of credited service at the time the plant closed.

1

On May 1, 1992 Defendant formally terminated all hourly employees at the Jackson plant. Defendant paid Plaintiff "general disability benefits[1]" from November 26, 1991 through June 22, 1992. A.R. 0464. On June 21, 1994 Defendant agreed to redeem its potential liability for Plaintiff's workers' disability compensation payments for $67,500. A.R. 0466.

On June 10, 1996 the Social Security Administration ("SSA") concluded that Plaintiff was fully eligible for Social Security benefits beginning on February 24, 1995. The Commissioner explained:

> You said you have been disabled since 11/25/91 due to a nervous condition, a hearing problem, a back injury, a right knee injury, and a right arm problem. The evidence we obtained shows you are disabled. However, the earliest date we can establish disability is 2/24/95, the day after your prior claim was denied at the hearing level. Therefore, we have established 2/24/1995 as the onset date of your disability.

A.R. 0333.

In June, 1996 Plaintiff applied for disability retirement benefits from Defendant's ERISA plan, and included the June 10, 1996 letter from the SSA. On July 9, 1996 Defendant's Pension Committee sent Plaintiff a letter explaining that it had determined Plaintiff did not qualify for disability retirement benefits because the SSA had concluded he was not disabled until February 24, 1995. A.R. 0293.

On June 19, 2000 the SSA sent Plaintiff another award notice, which stated, "[b]eginning October 1994, we can pay you benefits at the full rate. This is because we are no longer considering the workers' compensation lump-sum award when we figure the benefit amount." A.R. 0473.

---

[1]These disability benefits appear to be unrelated to the "Disability Retirement Benefits" that are the subject of the current dispute between the parties.

2

The Social Security Administration sent another letter to Plaintiff on June 28, 2001, stating in pertinent part that:

> you asked us for information from [Plaintiff's] record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter. Other Important Information   MR. HARRELL CURRENTLY HAS AN APPEALS COUNCIL REVIEW PENDING TO DETERMINE IF HE SHOULD BE ENTITLED TO DISABILITY BENEFITS FOR 1991 ON.

A.R. 0475.

On August 20, 2001 the Michigan Pension Rights Project requested that Defendant's Pension Committee review its prior determination that Plaintiff was not entitled to disability benefits under Defendant's ERISA plan. The Michigan Pension Rights Project attached the correspondence from the SSA and detailed medical records to its request.

The Pension Rights Committee argued that while the SSA had previously found Plaintiff was not disabled until 1995, the SSA had vacated that decision and now had no conclusion concerning whether Plaintiff was medically disabled in 1991 or 1992.

> Indeed, Social Security revised the disability onset date to 5-01-94 as shown on the Entitlement Status report, Notice of Award letter dated June 19, 2000. (Admin Rec. 473). The Social Security Notice does not establish when Mr. Harrell became disabled. Currently Mr. Harrell has a Social Security Appeals Counsel [sic] Review pending to determine if he should be entitled to Social Security disability benefits from 1991. (See Social Security Administration letter of June 28, 2001 [Admin. Rec. 0475])."

A.R.0358.

On October 2, 2001 Defendant's Pension Committee sent a letter to the assistant director of the Pension Rights Project, explaining that it had decided to deny Plaintiff's claim for disability benefits. A.R. 0519. The Pension Committee reiterated its position that in order to qualify for

3

Disability Retirement Benefits, Plaintiff needed to demonstrate that he had been terminated by

reason of a total and permanent disability, and that it considered "the date as of which the Social

Security Administration indicates a person's disability starts as conclusive evidence of when the

person's Total and Permanent Disability starts within the meaning of the plan."  A.R. 0523.

The Committee specifically considered the effect of the June 19, 2000 award notice from the

Social Security Administration.  The Committee explained:

> You have submitted along with your August 20, 2001 letter
> requesting a review of Mr. Harrell's claim for disability benefits a
> new Notice of Award dated June 19, 2000 which you indicate
> establishes that "Social Security revised the disability onset date to
> 5-01-94." . . . For present purposes, the Committee assumes you have
> correctly stated that the June 19, 2000 Notice of Award establishes
> that Social Security revised the disability onset date to May 1, 1994.

A.R. 0524.

The Committee reasoned that, since the June 19, 2000 document conclusively established

that Plaintiff did not become disabled until May 1994, he could not have been terminated "by reason

of" a disability in April 1992.  Since the Pension Committee regarded the June 19, 2000 SSA notice

as conclusive of the onset of Plaintiff's disability, it dismissed as the other records submitted by the

Pension Rights Project as irrelevant:

> While the additional medical records you have submitted may
> establish that Mr. Harrell had sustained a variety of injuries and had
> a variety of other medical conditions for which he was receiving
> treatment over a period of time, none of these records indicate that he
> was Totally and Permanently Disabled before May 1, 1994, the date
> as of which you now assert the Social Security Administration
> determined he became disabled.

A.R. 0525.

## II.    Defendant's ERISA Plan

4

Plaintiff is covered by an amended version of Defendant's 1989 ERISA plan.  A.R. 0001. Under Defendant's original 1989 plan, participants became entitled to receive benefits upon reaching one of three retirement dates.  Defendant's 1989 plan defined how a participant could receive a retirement date, but it did not contain any provision for Disability Retirement benefits.

On March 21, 1992, Defendant amended the terms of the 1989 ERISA plan as applied to workers at the Jackson, Michigan plant.  "Schedule XI" A.R. 0153.  Schedule XI's amendments to defendant's plan create a fourth type of retirement, "Disability Retirement," define a plan participant's Disability Retirement Date, and define benefits available to a participant upon his or her Disability Retirement Date.

As amended by Schedule XI, Defendant's ERISA plan is comprised of eleven sections. Section 1 of Defendant's plan purports to contain definitions of the plan's terms.  *See* A.R. 0002-03, 0153-0180.  Section 2 Defines the eligibility requirements for participation in Defendant's plan, and the conditions necessary to vest in benefits under the plan.  Section 3 defines how contributions shall be made to the plan.  Section 4 defines the retirement dates for "Normal Retirement," "Early Retirement," "Deferred Retirement," and "Disability Retirement" plan participants and former participants who have vested.  Section 5 defines the benefits available to the classes of retirees described in section 4.  Section 6 governs changes in employee stats.  Section 7 defines the ways that Defendant's plan can be amended or terminated.  Section 8 sets up the procedures by which the plan is to be administered.  Sections 9 through 11, not at issue in this case, are respectively titled "Miscellaneous," "Top-Heavy Provisions," and "Governing Law, Etc."  A.R. 0003-0004.

Under Sections 8 and 9 of Defendant's amended plan, decisions concerning eligibility for pension benefits are made by Defendant's Pension Committee.  A.R. 0116-0117.  Defendant's plan

gives this committee the power to administer the plan, to interpret its terms, and to resolve all

questions involving an individual's participation in the plan and entitlement to benefits. *Id.*

Of principal importance to the instant litigation are three provisions defining eligibility for

Disability Retirement benefits

Paragraph 1.46:

"Disability Retirement Date" shall mean, with respect to a
Participant, the date as of which the Participant becomes entitled to
receive disability retirement income, as determined by the Pension
Committee in accordance with Section 4.4.

Paragraph 1.47:

"Total and Permanent Disability" shall mean total and permanent
disability as determined by the Committee on the basis of proof
satisfactory to it that the Participant has applied for and is receiving
Social Security Disability benefits.

and Paragraph 4.4:

A Participant's Disability Retirement Date shall be the first day of the
month coincident with or next following the later of (a) the date on
which his employment with the Company has terminated by reason
of Total and Permanent Disability or (b) the date that the Pension
Committee has received proof satisfactory to it of such Total and
Permanent Disability, provided that he has completed at least ten (10)
Years of Service.

**III.    Analysis**

Plaintiff alleges that Defendant's Pension Committee decision to deny benefits was arbitrary

and capricious, both in interpreting the plan to require a claimant to show that he was terminated "by

reason of" a disability and in finding that Plaintiff was not terminated for this reason. Plaintiff

suggests that the June 19, 2000 notice from the Social Security Administration shows that he was

disabled before May, 1994, but that he was ineligible for Social Security Disability benefits until

6

that time because he took a disability-related workmen's compensation payment from Defendant. Plaintiff argues that it is unreasonable and contrary to the intent of the parties to read the plan so that Plaintiff's acceptance of disability-related payments from Defendant would disqualify Plaintiff's for Disability Retirement benefits.

## A.      Standard of Review

The construction of an ERISA contract is guided by the federal common law rules of contract interpretation. *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 712 (6th Cir. 2000); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).  These rules take direction both from state law and from more general principles of contract law.  *Perez*, 150 F.3d at 556 (citing *Regents of the Univ. of Michigan v. Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997).

The scope of the Court's review of an ERISA plan administrator's decision is limited to review of the evidence before the administrator at the time it made its decision.  *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998).  The review is analogous to an action for review of a federal administrative decision.

When the administrator of an ERISA plan denies benefits under the plan to a claimant, courts generally review the decision under a *de novo* standard.  *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 103 (1989).  But when an ERISA plan gives the plan administrator discretionary authority to determine eligibility for benefits and construe the terms of the plan, the decisions of the administrator are reviewed under a highly deferential standard, in which the Court merely asks whether the administrator's decision to deny benefits was the result of a deliberate principled reasoning process and supported by substantial evidence.  *Brooks v. General Motors Corp.*, 203 F.

Supp. 2d 818, 824 (6th Cir. 2002); *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

However, Defendant both funds and administers its ERISA plan. Defendant therefore incurs an expense when the plan grants benefits and profits when the plan denies them. The Sixth Circuit has recognized that this situation creates an inherent conflict of interest. *Killian v. Healthsource Provident Administrators*, 152 F.3d 514, 521 (1998). "If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 109 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)). In such cases, in addition to conducting its normal "arbitrary and capricious review," the Court must ask whether the conflict improperly influenced the administrator's decision. *Killian,* 152 F.3d at 521.

There has been considerable confusion in the federal courts regarding this modified arbitrary and capricious standard of review. For example, it is unclear whether doctrine of *contra proferentem* applies against a the plan administrator. *Compare Morton v. Smith,* 91 F.3d 867, 871 (7th Cir 1996) (finding *contra proferentem* does not apply), *and Peach v. Ultramar Diamond Shamrock*, 229 F. Supp. 2d 759, 766 (E.D. Mich. 2002) (same), *with University Hosps. Of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000) (stating that *contra proferentem* does apply in dictum), *and Reed v. Walmart Stores, Inc.*, 197 F. Supp. 2d 883, 889 (E.D. Mich 2002) (applying *contra proferentem*).

As the Seventh Circuit noted in *Morton*, the ERISA arbitrary and capricious standard of review "does not involve a construction of the terms of the plan; it involves a more abstract inquiry – the construction of someone else's construction." *Morton,* 91 F.3d at 871. This "abstract inquiry"

8

has two parts.  The Court first reviews the plan administrator's decision to determine whether the administrator went through the process of applying the federal rules of contract interpretation in a deliberate and principled manner and then reviews whether the decision at each stage in that process was supported by substantial evidence.  *See Brooks*, 203 F. Supp. 2d at 824.

**B.      Defendant's Motion For Summary Judgment Should Be Denied**

At issue in this case is whether the Pension Committee's October 2, 2001 decision to deny Plaintiff's application for Disability Retirement Benefits was arbitrary and capricious.  Defendant maintains that paragraph 4.4 governs Plaintiff's claim.

According to Paragraph 4.4:

> A Participant's Disability Retirement Date shall be the first day of the month coincident with or next following the later of (a) the date on which his employment with the Company has terminated by reason of Total and Permanent Disability or (b) the date that the Pension Committee has received proof satisfactory to it of such Total and Permanent Disability, provided that he has completed at least ten (10) Years of Service.

Defendant argues first that Plaintiff was not "a participant" within the meaning of paragraph 4.4 when he applied for Disability Retirement Benefits.  Second, Defendant argues that Plaintiff must prove he was terminated "by reason of Total and Permanent Disability" because the words "the later of" and "or" link clauses (a) and (b) together in such a way that a participant does not receive a Disability Retirement Date unless a participant has satisfied both clauses.  Third, Defendant argues that even if Plaintiff can receive a Disability Retirement date by satisfying clause (b) alone, Plaintiff still must prove he was terminated "by reason of Total and Permanent Disability" to do so.

9

1.      **Plaintiff Is A "Participant" for Purposes of Paragraph 4.4**

Defendant argues that Plaintiff ceased to be a "Participant" for purposes of paragraph 4.4 when he was terminated in April, 1992. Defendant's reading is untenable. The plain language of paragraph 4.4 permits a former employee to obtain a Disability Retirement Date after that employee has been terminated. For employees with more than ten years of credited service, clause (b) contemplates a Disability Retirement Date *after the employee's termination date,* at the time the Pension Committee receives adequate proof of disability. Therefore, the only reasonable constructions of paragraph 4.4 include as "Participants" former employees who, like Plaintiff, have more than ten years of credited service.

**2.     Paragraph 4.4 Gives a Disability Retirement Date if Clause (b) is Satisfied but Clause (a) Never Occurs**

Defendant argues that a claimant does not receive a Disability Retirement Date unless the claimant satisfies both clauses of paragraph 4.4. The Court finds this interpretation contrary to the unambiguous language of paragraph 4.4.

Paragraph 4.4 provides that a participant's Disability Retirement Date occurs on the later of the date from clause (a) or the date from clause (b). Defendant somehow argues that the conjunction *or* between two clauses implies that both clauses are necessary conditions. Defendant appears to have confused *or* with *and*. *Or* is in common use, and its meaning is rarely subject to dispute among native speakers of English without law degrees. *Or* does not mean "only if also." *Or* is "[u]sed to coordinate two (or more) sentence elements between which there is an alternative." *Oxford English Dictionary* (draft rev. 2004) *at* http://www.oed.com (search "or"). *Or* has the effect of "appending a secondary alternative or the consequence of setting aside the primary statement: *otherwise*, *else*; *in any other case*; *if not*." *Id.* (emphasis added). The word *or* here means that clauses (a) and (b) are

11

sufficient conditions to Disability Retirement, and paragraph 4.4 can therefore give a Disability Retirement date if one clause is satisfied but the other is not.

Paragraph 4.4 defines a Disability Retirement date as "the later of" the dates in clause (a) or clause (b). Defendant argues that paragraph 4.4 never gives a Disability Retirement date to a claimant who is terminated for a reason other than disability, because clause (a) gives no date to compare with clause (b). This construction is contrary to the ordinary meaning paragraph 4.4. When clause (b) has occurred and it is clear that clause (a) can never occur, "the later of" two dates is the date of clause (b). Therefore, a participant receives a Disability Retirement date when he or she satisfies clause (b).

**3.    Defendant's Interpretation of Clause (b) is Unreasonable**

Defendant argues that clause (b) can only be satisfied by a participant who was terminated by reason of Total and Permanent Disability. Defendant maintains that the phrase "such Total and Permanent Disability" in paragraph 4.4 is unambiguous, and that the word "such" incorporates the causal restriction of clause (a) into clause (b). Defendant argues that a participant can therefore only satisfy clause (b) if he submits proof of a "Total and Permanent Disability" that was the reason for his termination. Defendant appears to argue that "Total and Permanent Disability" means either eligibility for Social Security Disability benefits or proof of such eligibility. Defendant bases itsinterpretation on the definition of "Total and Permanent Disability" in paragraph 1.47: "total and permanent disability as determined by the Committee on the basis of proof satisfactory to it that the Participant has applied for and is receiving Social Security Disability benefits." However reasonable Defendant's gloss on the word "such" might be, Defendant's interpretation of paragraph 4.4 is untenable.

12

"Total and Permanent Disability" in paragraph 4.4 cannot reasonably by interpreted to mean "proof satisfactory to [the Pension Committee] that the Participant has applied for and is receiving Social Security Disability benefits." Paragraph 4.4's use of "the later of" to connect clause (a) and clause (b) simply means that clause (b) can occur after clause (a). Thus the date in clause (b) (the date the Pension Committee receives proof of "Total and Permanent Disability") can occur subsequent to the date in clause (a), the date a participant was terminated by reason of "Total and Permanent Disability." The Pension Committee must therefore be capable of receiving proof of "Total and Permanent Disability" *after* the "Total and Permanent Disability" begins.

Likewise, "Total and Permanent Disability" cannot simply mean "eligibility for Social Security Disability payments" or "'disability' as determined by the SSA." In order for a "Total and Permanent Disability" to cause a participant's termination, it must be possible for the "Total and Permanent Disability" to predate the termination. But regardless of his or her medical condition, a person is not considered "disabled" by the SSA and is therefore not eligible for SSA disability payments until *after* he or she ceases to be substantially and gainfully employed. Under Defendant's construction, a participant who is terminated by reason of a medical condition that satisfies the SSA's medical disability criteria is not terminated "by reason of Total and Permanent Disability" because the participant's termination precedes the onset of his or her "Total and Permanent Disability." Defendant's interpretation of its plan makes a participant's termination a precondition to his "Total and Permanent Disability" and his "Total and Permanent Disability" a precondition to hit termination. Defendant's reading of clause (b) is arbitrary and capricious.

**4.    Defendant's Arbitrary and Capricious Interpretation of Paragraph 4.4 Caused Defendant to Deny Plaintiff's Claim for Disability Retirement Benefits**

13

Defendant employed an arbitrary and capricious construction of its ERISA plan to deny Plaintiff's claim for Disability Retirement benefits. Defendant's Motion for Summary Judgment should be **DENIED**.

**C.     Plaintiff's Motion for Summary Judgment Should Be Denied**

Plaintiff attempted to convince Defendant that he was disabled in 1992 through the use of various medical records showing (1) that his disabling medical condition dates back to 1991, (2) that this medical condition was substantially the same condition that the Social Security Administration concluded was a total and permanent disability in 1994, and (3) that non-medical eligibility requirements made Plaintiff ineligible for Social Security Disability payments prior to 1994.[2] Defendant refused to consider this evidence, stating:

> While the additional medical records you have submitted may establish that Mr. Harrell had sustained a variety of injuries and had a variety of other medical conditions for which he was receiving treatment over a period of time, none of these records indicate that he was Totally and Permanently Disabled before May 1, 1994.

A.R. 0525.

While it is possible that Plaintiff's proof should qualify him for a Disability Retirement date, it is far from certain. As discussed above, Defendant's plan fails to provide a workable definition of the essential phrase "Total and Permanent Disability" in paragraph 4.4. This central ambiguity in paragraph 4.4 is apparent from a reading of the text alone.

The procedures for giving meaning to such a contract provision are well established. When a contract provision is apparent on the face of the contract, the interpreter looks beyond the four

_____

[2]Indeed, Plaintiff argues that he was ineligible for Social Security Disability payments until 1994 because of the lump sum workmen's compensation payment he received from Defendant due to his disability.

corners of the contract to get at the true intent of the parties, considering "relevant dictionary definitions . . . other decisions of courts that have previously interpreted the term . . . standards and practices within the relevant industry . . . [and] the parties actions during the pendency of the agreement." *City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (internal citations omitted). Where, as here, a contract's "meaning is obscure and its construction depends on other extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." *Id. (quoting D'avanzo v. Wise & Marsac. P.C.,* 223 Mich. App. 314, 565 N.W.2d 915, 918 (1997)).

Substantial issues of material fact remain both as to appropriate definition of the term "Total and Permanent Disability"in paragraph 4.4 and as to whether Plaintiff is entitled to a Disability Retirement date. Plaintiff's Motion for Summary Judgment should be **DENIED**.

## NOTICE TO PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States*

*District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 8/16/05                         s/ Mona K. Majzoub
                                       UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 16, 2005                 s/ Lisa C. Bartlett
                                       Courtroom Deputy

16