**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**WALTER HARRELL, JR.,**

    **Plaintiff,**

                                      **Case No. 04-72139**

**v.**

                                      **HONORABLE DENISE PAGE HOOD**

**WYMAN-GORDON COMPANY,**
a Foreign Corporation**,**

    **Defendant.**

_____/

## ORDER ACCEPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION

This matter is before the Court on Magistrate Judge Mona K. Majzoub's Report and Recommendation dated August 16, 2005.  Defendant timely filed objections to the Magistrate Judge's Report and Recommendation.

Magistrate Mona K. Majzoub concluded that the Plaintiff's Motion for Summary Judgment should be denied, and that Defendant's Motion for Entry of Judgement should also be denied.

**I.  Standard of Review**

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636.  This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.

In order to have preserved his right to appeal the Magistrate Judge's recommendation, Defendant was obligated to file objections to the Report and Recommendation within ten days of

service of a copy, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Defendant filed timely objections to the Magistrate Judge's recommendation on August 26, 2005.

**II. Procedural History and Applicable Law**

On June 6, 2004, Plaintiff Walter Harrell, Jr. [hereinafter "Plaintiff"] filed his Complaint with this Court. The Complaint alleged breach of a benefits contract in violation of the Employment Retirement Security Act of 1974 [hereinafter "ERISA"]. (Pls. Comp at 2). The Defendant Wyman-Gordon Company [hereinafter "Defendant"], filed Defendant's Motion for Entry of Judgment on January 18, 2005. Plaintiff also filed Plaintiff's Motion for Summary Judgment on January 18, 2005. Plaintiff and Defendant both filed responses to the opposing party's Motion on February 11, 2005. On February 17, 2005, Plaintiff's Motion for Summary Judgment and Defendant's Motion for Entry of Judgment were referred to the Magistrate Judge.

On August 26, 2005, Defendant filed objections to the Report and Recommendation of the Magistrate Judge. On September 14, 2005, Plaintiff filed a Motion to Strike Defendant's Objections to Magistrate Judge's Report and Recommendation, and on September 26, 2005, Defendant filed a Response to Plaintiff's Motion to Strike Defendant's Objections to Magistrate Judge's Report and Recommendation.

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), a majority

decision, the panel set forth "Suggested Guidelines" to adjudicate ERISA actions.[1] The Sixth Circuit stated that the Rule 56 Summary Judgment procedure is "inapposite to the adjudication of an ERISA action" because of the Circuit's "precedents [which] preclude an ERISA action from being heard by the district court as a regular bench trial." *Wilkins*, 150 F.3d at 619.[2] The district court should use neither the summary judgment nor bench trial procedures in deciding ERISA actions. *Id.* at 620. As to the merits of the case, the district court should conduct a review based solely upon the administrative record and render findings of fact and conclusions of law. *Id.* at 619. If a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside of the administrative record. *Id.*

## III. Background

Plaintiff worked at Defendant's Jackson, Michigan plant from 1975 until November 26, 1991, when he took disability leave to have ankle surgery. (R&R at 1). Defendant's Jackson plant ceased all production in December 1991, and officially closed on April 30, 1992. (R&R at 1). At the time that the plant closed, Plaintiff had 14.4 years of credited service. (R&R at 1).

On May 1, 1992, Defendant formally terminated all hourly employees at the Jackson plant. (R&R at 2). Defendant paid Plaintiff "general disability benefits[3]" from November 26, 1991 through

---

[1] The Panel included, Judges Ryan, Cole and Gilman. Judge Cole wrote the judgment of the court, which all three judges agreed to, affirming the district court's decision granting judgment in favor of the Plan Administrator and affirming the district court's ruling that no evidence which was not submitted to the Plan Administrator is to be considered by the court. Judge Gilman wrote the opinion regarding the summary judgment issue, which was agreed to by Judge Ryan, but not by Judge Cole.

[2] An ERISA claim is equitable in nature and is not eligible for a jury trial. *Wilkins*, 150 F.3d at 616, *citing Blair v. General Motors Corp.*, 895 F.2d 1094, 1096 (6th Cir. 1990).

[3] These disability benefits appear to be unrelated to the "Disability Retirement Benefits" that are the subject of the current dispute between the parties.

June 22, 1992.  (R&R at 2).

On June 19, 1996, the Social Security Administration [hereinafter "SSA"], concluded that Plaintiff was fully eligible for Social Security benefits beginning on February 24, 1995.  (R&R at 2).  The Commissioner explained:

> You said you have been disabled since 11/25/91 due to a *nervous condition, a hearing problem, a back injury, a right knee injury, and a right arm problem*.  (emphasis added).  The evidence we obtained shows you are disabled.  However, the earliest date we can establish disability is 2/24/95, the day after your prior claim was denied at the hearing level.  Therefore, *we have established 2/24/1995 as the onset date of your disability*.  (emphasis added).

(R&R at 2); A.R. 0333.

In June 1996, Plaintiff applied for disability retirement benefits from Defendant's ERISA plan, and included the June 10, 1996 letter from the SSA.  (R&R at 2).  On July 9, 1996, Defendant's Pension Committee sent Plaintiff a letter explaining that it determined Plaintiff did not qualify for disability retirement benefits because the SSA had concluded he was not disabled until February 24, 1995.  (R&R at 2).

On June 19, 2000, the SSA sent Plaintiff another award notice, which stated, "[b]eginning October 1994, we can pay you benefits at the full rate.  This is because we are no longer considering the workers' compensation lump-sum award when we figure the benefit amount."  (R&R at 2).  The Social Security Administration sent another letter to Plaintiff on June 28, 2001, stating in pertinent part that:

> You asked us for information from [Plaintiff's] record.  The information that you requested is shown below.  If you want anyone else to have this information, you may send them this letter.  Other Important Information: Mr. Harrell currently has an Appeals Council Review pending to determine if he should be entitled to disability benefits for 1991 on.

(R&R at 3); A.R. 0475.

4

On August 20, 2001, the Michigan Pension Rights Project [hereinafter "MPRP"] requested that Defendant's Pension Committee review its prior determination that Plaintiff was not entitled to disability benefits under Defendant's ERISA plan. (R&R at 3). The MPRP attached the correspondence from the SSA and detailed medical records to its request. (R&R at 3).

On October 2, 2001, Defendant's Pension Committee sent a letter to the assistant director of the MPRP, explaining that it had decided to deny Plaintiff's claim for disability benefits. (R&R at 3-4). The Pension Committee reiterated its position that in order to qualify for Disability Retirement Benefits, Plaintiff needed to demonstrate that he had been terminated by reason of a total and permanent disability, and that it considered "the date as of which the SSA indicates a person's disability starts as conclusive evidence of when the person's Total and Permanent Disability starts within the meaning of the plan." (R&R at 4); A.R. 0523.

The Committee specifically considered the effect of the June 19, 2000 award notice from the SSA. The Committee explained:

> You have submitted along with your August 20, 2001 letter requesting a review of Mr. Harrell's claim for disability benefits a new Notice of Award dated June 19, 2000 which you indicate establishes that "Social Security revised the disability onset date to 5-1-94."...For present purposes, the Committee assumes you have correctly stated that the June 19, 2000 Notice of Award establishes that Social Security revised the disability onset date to May 1, 1994.

(R&R at 4); A.R. 0524.

The Committee reasoned that, since the June 19, 2000 document conclusively established that Plaintiff did not become disabled until May 1994, he could not have been terminated "by reason of" a disability in April 1992. (R&R at 4). Since Defendant's Pension Committee regarded the June 19, 2000 SSA notice as conclusive of the onset of Plaintiff's disability, it dismissed the other records submitted by the MPRP as irrelevant. (R&R at 4).

5

The Plan portion most applicable to Plaintiff's claim for disability is titled "Schedule XI." (Def.'s Mtn. For Entry of J. At 2). It states:

> The Jackson, Michigan plant of the Jackson Crankshaft Company Division of Wyman-Gordon Company ceased production in December 1991. As a result, none of the Participants or former Participants in the Jackson UAW Plan were active employees of Wyman-Gordon Company at its Jackson, Michigan plant (and therefore none were active Participants covered by the provisions of the Schedule) after April 1992. The rights, benefits, and obligations under the Plan of a former Participant shall be governed exclusively, except as otherwise provided herein, by the provisions of the Jackson UAW Plan in effect as of the final day on which he was a Participant thereunder.

A.R. 0153-0154

Schedule XI became part of the 1989 Wyman-Gordon Company Retirement Income Plan as of March 31, 1992, at which time Schedule XI superseded a 1985 Retirement Income Plan for Jackson employees represented by U.A.W. Local 953. (Def.'s Mtn. For Entry of J. At 2). The pertinent provisions of Schedule XI in the instant action are 1.17, 1.46, 1.47, 2.2, and 4.4.

> 1.17 "Eligible Employee" shall mean any individual who (a) is employed by the company at its Jackson, Michigan plant and is a member of the bargaining unit as defined in the collective bargaining agreement between the Company and the Union and (b) customarily or actually has at least one thousand (1,000) Hours of Employment in the twelve consecutive month period commencing on his Employment Commencement Date or in any subsequent Plan Year (beginning with the first Plan Year which began after his Employment Commencement Date)...Because of the closing of its Jackson, Michigan plant, the Company, by May 1, 1992, no longer had any Eligible Employees.

A.R. 0155-0156.

> 1.46 "Disability Retirement Date" shall mean, with respect to a Participant, the date as of which the Participant becomes entitled to receive disability retirement income, as determined by the Pension Committee in accordance with Section 4.4.

A.R. 0164.

6

    1.47 "Total and Permanent Disability" shall mean total and permanent disability as determined by the Committee on the basis of proof satisfactory to it that the Participant has applied for and is receiving Social Security Disability benefits.

A.R. 0164.

    2.2 An Eligible Employee shall cease to be a Participant on the last day of the Plan Year in which he has a Break in Service, or, if earlier, the date on which he terminates his employment as an Eligible Employee, dies or retires in accordance with Section 4 of the Plan.  An Eligible Employee who ceases to be a Participant may again become a Participant on his Reemployment Commencement Date. *Because of the closing of the Jackson Crankshaft Company Division of Wyman-Gordon Company, all Eligible Employees had ceased to be Participants by May 1, 1992.*  (emphasis added).

A.R. 0165.

    4.4 A Participant's Disability Retirement Date shall be the first day of the month coincident with or next following the later of (a) the date on which his employment with the Company has terminated by reason of Total and Permanent Disability or (b) the date that the Pension Committee has received proof satisfactory to it of such Total and Permanent Disability, provided that he has completed at least ten (10) Years of Service.  Upon commencement of a disability benefit, payments made on behalf of the Company under its Accident and Sickness Policy shall be terminated.  Disability benefits under the Plan shall not be continued after the Social Security Administration determines that the Participant is no longer entitled to Social Security benefits.  A Participant who retires from the Company by reason of Total and Permanent Disability and who thereafter recovers from his disability but is not reemployed by the Company shall thereafter be deemed, for purposes of the Plan, to be a former Participant whose employment with the Company terminated for a reason other than retirement under Section 4, and his rights, if any, to retirement income under the Plan shall be determined under Section 6.1.

A.R. 0168-0169.

**IV. Analysis**

7

The Court accepts the Magistrate Judge's conclusion that Plaintiff's Motion for Summary Judgment should be denied, but rejects the Magistrate Judge's conclusion that Defendant's Motion for Entry of Judgment should be denied.

The major point of contention in the instant case revolves around the parties disparate interpretations of Defendant's Retirement Income Plan, Section 4.4, which included provisions for disability retirements applicable to its hourly workforce, however, this Court needs not discuss these issues because it finds that Plaintiff is not a Participant in Defendant's Plan.

The scope of the Court's review of an ERISA plan administrator's decision is limited to review of the evidence before the administrator at the time the decision is made. *Wilkins*, 150 F.3d at 615.

Pursuant to Section 1.17, "because of the closing of its Jackson, Michigan plant, the Company, by May 1, 1992, no longer had any Eligible Employees." Plaintiff received worker's compensation benefits under the category of "general disability" when he had ankle surgery on November 26, 1991. A.R. 0464. At that time, Plaintiff was an hourly employee at the Jackson, Michigan Plant. Defendant's Jackson plant ceased all production in December 1991, and officially closed on April 30, 1992. (R&R at 1). On May 1, 1992, Defendant formally terminated all hourly employees at the Jackson plant. (R&R at 2). Therefore, pursuant to Section 2.2, Plaintiff was no longer an eligible employee under the Defendant's Retirement Income Plan on May 1, 1992. At that time, Plaintiff did not meet the requirements of Section 1.47 - Total and Permanent Disability.

Turning to Section 1.46 - Plaintiff's Disability Retirement Date, the SSA concluded that Plaintiff was fully eligible for Social Security benefits beginning on February 24, 1995. (R&R at 2). In its letter, the SSA cited numerous factors that Plaintiff cited as reasons for his disability, "a

nervous condition, a hearing problem, a back injury, a right knee injury, and a right arm problem," however, none of these ailments refer to the injury which caused Plaintiff to qualify for "general disability" on November 26, 1991. There are no documents in the administrative record to indicate that the factors cited by the SSA were caused by the ankle injury sustained by Plaintiff while he was employed by Defendant. Additionally, the SSA stated in its letter, "the earliest date we can establish disability is 2/24/95, the day after your prior claim was denied at the hearing level." This date, 2/24/95, is subsequent to the date on which Plaintiff ceased to be a Participant in Defendant's Retirement Income Plan.

Therefore, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Entry of Judgment is GRANTED.

Accordingly,

IT IS ORDERED that the Report and Recommendation of Magistrate Judge Mona K. Majzoub **[Docket No. 22, filed on August 16, 2005]**, is ACCEPTED in part and REJECTED in part as this Court's findings and conclusions of law, in addition to this Court's analysis above.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment **[Docket No. 13, filed on January 18, 2005]** is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Entry of Judgment **[Docket No. 11, filed January 18, 2005]**, is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Objections to Magistrate Judge's Report and Recommendation **[Docket No. 26, filed September 14, 2005]**, is MOOT.

        s/Denise Page Hood  
        Denise Page Hood  
        United States District Judge

Dated: September 29, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2005, by electronic and/or ordinary mail.

        s/William F. Lewis  
        Case Manager